UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY DUETT,

Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant.

CASE NO. 2:19-cv-01917-LK-BAT

**ORDER GRANTING IN PART MOTION FOR FEES AND SANCTIONS**

Before the Court is Plaintiff Mary Duett's Motion for Fees and Sanctions Pursuant to Order of March 8, 2022. Dkt. 38 (citing Dkt. 34). Plaintiff advises that not all discovery issues have been resolved. Plaintiff also seeks sanctions pursuant to Fed. R. Civ. P. 26(g)(3). *Id.* Defendant State Farm Mutual Automobile Insurance Company ("State Farm") opposes the motion. Dkt. 42.

## DISCUSSION

### A. Remaining Discovery Issues

On November 4, 2021, Plaintiff moved to compel discovery from State Farm. Dkt. 24. On February 11, 2022, the Court granted the motion in part and ordered State Farm to produce those portions of the claim file that it had redacted under the work product doctrine, and to produce for an *in camera* review, documents redacted under the attorney client privilege. Dkt. 34. The Court reserved ruling on Plaintiff's motions for sanctions. *Id.*, p. 10. State Farm produced the documents as directed on February 18, 2022 and provided supplemental responses

to interrogatories. Issues remaining for resolution are the Court's ruling following its *in camera* review, Plaintiff's contention that State Farm's supplemental response to Interrogatory No. 5 is incomplete, and Plaintiff's motion for sanctions.

1. <u>SFCLAIM 258-266 – Attorney Client Privilege</u>

On March 8, 2022, the Court informed the parties that it believed all issues relating to Plaintiff's motion to compel had been resolved. However, Plaintiff states and State Farm confirms, that documents SF258-266 (correspondence between counsel and State Farm's claims representative) have not been produced pending a final decision by the Court following its *in camera* review.

> To place these documents in context, following State Farm's denial of Plaintiff's UIMin response to receipt of the May 10, 2018 letter, State Farm consulted with counsel, *see* Albers Dep., p. 85, then State Farm's counsel responded to plaintiff's counsel, asserting that State Farm's internal evaluation was protected and not subject to disclosure pursuant to *Hanson v. State Farm*, *supra.*

To place these documents in context, following State Farm's denial of Plaintiff's UIM claim on April 18, 2018 ("Our evaluation would indicate Ms. Duett was made whole by [the at fault carrier's insurance provider], therefore, State Farm is unable to consider further payment under the underinsured motorist coverage."). Dkt. 1-1, ¶ 3.7; Dkt. 14, Richardson Decl., Ex. 5. On May 10, 2018, Plaintiff asked State Farm to identify and list the medical and other records reviewed by State Farm; a list of the injuries State Farm accepted as causally related to the accident; a list of the injuries State Farm did not accept as causally related; medical recording supporting State Farm's position; total general and special damages accepted on the claim; an accounting of how State Farm determined that her damages came to exactly $100,000; and a list of any other recoveries State Farm felt were applicable to the calculation of Plaintiff's UIM claim. Dkt. 14, Richardson Decl., Ex. 6 (the "May 10, 2018 Letter").

State Farm sent the May 10, 2018 Letter to counsel for advice in responding. Dkt. 42, p. 6 (citing Supplemental Answer to Interrogatory No. 5). It is these communications that are contained in SF258-266.

The Court concludes, from its *in camera* review of SF258-266, that counsel was not engaged in the quasi-fiduciary tasks of investigation and evaluating or processing the claim, but instead was being asked to provide legal advice as to whether State Farm was legally obligated to provide the information requested in Plaintiff's May 10, 2018 letter – a question that could impact State Farm's liability. *See Cedell v. Farms Ins. Co. of Wash*., 176 Wn.2d 686, 699 (2013). Accordingly, Plaintiff's motion to compel these documents is denied.

State Farm's counsel responded to the May 10, 2018 directly, stating that, based on *Hanson v. State Farm Mut. Auto. Ins. Co*., 261 F. Supp. 3d 1110, 1118 (W.D. Wash. 2017), State Farm was not obligated to provide the information requested. This Court ultimately disagreed with counsel's reliance on *Hanson* to the extent State Farm argued that its work product – prior to the IFCA claim notice was not discoverable. Dkt. 34. Consistent with that Order, State Farm has now provided supplemental answers to Plaintiff's interrogatories addressing the items set forth in the May 10, 2018 Letter.

2. <u>Supplemental Answer to Interrogatory No. 5</u>

The Court also granted Plaintiff's motion to compel State Farm to answer Interrogatories 1, 2, 3, 4, and 5. Dkt. 34, p. 10. On March 4, 2022, State Farm supplemented its answers to those interrogatories. The supplemental answers are acceptable to Plaintiff, except for Interrogatory No. 5, which asked what steps State Farm took in its "investigation of correspondence dated May 10, 2018, sent by Plaintiff's counsel to State Farm's Claims Specialist Kandi Albers." Dkt. 30, Declaration of Randall Johnson, Exhibit 1.

> State Farm's March 5, 2022 Supplemental Answer to Interrogatory No. 5 stated, in pertinent part:
>
> First, to the extent the interrogatory seeks information about what State Farm did in response to receipt of the May 10, 2018 letter, State Farm consulted with counsel, *see* Albers Dep., p. 85, then State Farm's counsel responded to plaintiff's counsel, asserting that State Farm's internal evaluation was protected and not subject to disclosure pursuant to *Hanson v. State Farm*, *supra.*
>
> Second, to the extent that the interrogatory seeks disclosure of certain items of information listed on page 2 of the May 10, 2018 letter, please see State Farm's answers to interrogatories 2 through 4, above (note: the subparts of Interrogatory No. 2 are exactly the same as the inquiries 1 through 7 in the May 10, 2018 letter). These determinations were made prior to the May 10, 2018 letter being sent to State Farm.

Dkt. 39-1, pp. 12-13. Plaintiff argues that State Farm is still standing by its erroneous objection based on *Hanson*, which the Court has already overruled. The Court does not agree that this is the position taken by State Farm in its supplemental answer. State Farm stated that it "stands by its objection" that the interrogatory begs the question "because it asks for a disclosure of the 'investigation of correspondence' when the correspondence itself did not ask for any investigation. *Id.* p. 13. State Farm did not reassert its previous objection based on *Hanson*, but merely referred to counsel's response, in which counsel referred to *Hanson*.

State Farm is correct that the interrogatory simply asks what steps State Farm took after receiving the May 10, 2018 Letter and State Farm has adequately answered that query, *i.e.*, it referred the letter to its counsel to determine whether State Farm was obligated to respond.

Accordingly, Plaintiff's motion for further supplementation to this interrogatory answer is denied.

B. Motion for Sanctions

Monetary sanctions are authorized by Fed. R. Civ. P. 37(a).[1] *See also*, *Grimes v. City and County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1995) ("The authority of magistrates to impose discovery sanctions is established by 28 U.S.C. Sec. 636 and recognized by our decisions.").

If the Court grants a motion to compel, as it did here, it must, "after giving an opportunity to be heard," require the party, his attorney, or both "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The award is mandatory unless the Court finds that the opposing party's position was "substantially justified" or that "other circumstances make an award of expenses unjust." *Id*. The burden of establishing this substantial justification or special circumstances rests on the party being sanctioned. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). The rule's purpose is "to protect courts and opposing parties from delaying or harassing tactics during the discovery process." *Cunningham v. Hamilton County*, 527 U.S. 198, 208, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999).

Plaintiff argues that sanctions are warranted because State Farm's objections are inconsistent with the rules and existing law, are not a logical extension of the law, and caused unnecessary delay and increased costs. Dkt. 38, pp. 5-6. Plaintiff has submitted a summary of counsel's time with incurred and anticipated future attorney fees, in the amount of $18,907.50. *Id.*, pp. 7-8. State Farm argues that it was substantially justified in resisting production of its

---

[1] Plaintiff cites to Rule 26(g), which provides that discovery responses must be consistent with the rules and existing law, not interposed for any improper purpose, and not unreasonable or unduly burdensome. Under Rule 26(g)(3), the Court must impose an appropriate sanction if a certification violates Rule 26 without substantial justification.

internal evaluation content, so sanctions are not appropriate. Dkt. 42, pp. 8-10. State Farm does not object to the Court using the hours and rates requested by Plaintiff but does question the need for "anticipated future expenses" related to a follow-up deposition of Kandi Albers. Ms. Albers did not perform the initial UIM evaluation but agreed with and adopted the UIM evaluation by former State Farm employee, Danielle Tortorice. State Farm's counsel advises that he has been unable to contact Ms. Tortorice but has given her contact information to Plaintiff. *Id.*, p. 10.

State Farm argues that it was justified in "drawing the line at internal evaluation materials reflecting its claim professionals' opinions on the monetary value of plaintiff's claim" because this approach has been endorsed by Washington state courts. Dkt. 42, p. 3 (citing *Leahy v. State Farm Mut. Auto. Insur. Co.*, 3 Wash.App.2d 613, 418 P.3d 175, 181-182 (2018)). State Farm also contends that its objections are well founded because of the "adversarial relationship" between an insured and an insurer in the UIM context. These contentions are incorrect. First, *Leahy* is a state court decision, whereas the work product doctrine is governed by federal law. *Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 666 (W.D. Wash. 2007). State Farm made no attempt to justify its claims of work product under the work product doctrine.

Second, *Leahy* involved only those internal evaluations, mental impressions, and legal theories complied *after* the date State Farm received a demand letter stating that litigation would follow. *Id.* at 622. In this case, Plaintiff sought only those portions of State Farm's file that pre-dated the IFCA notice. Additionally, State Farm provided no authority for the proposition that due to the adversarial nature of UIM claims, they are treated differently than an ordinary claim of work product or that the mental impressions, conclusions, and opinions of an insurance company prepared in the ordinary course of business cannot be disclosed. The Court is aware that a UIM claim is not like other first party bad faith claims in that the UIM insurer "steps into the shoes of

the tortfeasor and may defend as the tortfeasor would defend" and that "the insurance company is entitled to counsel's advice in strategizing the same defenses that the tortfeasor could have asserted." *Leahy,* 418 P.3d at 182 (quoting *Cedell*, 295 P.3d at 246). However, these cases were discussing whether the presumption of no attorney-client privilege in bad faith claims extends to UIM bad faith claims. As to the work product doctrine, which is governed by federal law, the insurer (whether first party or UIM) must show that the documents it seeks to protect were prepared in anticipation of litigation or for trial.

State Farm also relies on *Ellwein v. Hartford Accident & Indem. Co*., 15 P.3d 640, (Wash. 2001), *overruled on other grounds by Smith v. Safeco Ins. Co*., 78 P.3d 1274 (Wash. 2003) for the proposition that adversarial relationship of a UIM claim 'allows an insurer to stand in the shoes of the tortfeasor". While *Ellwein* addressed whether a UIM carrier can "assert liability defenses available to the tortfeasor", it did not address objections to discovery. *Ellwein*, 15 P.3d. at 647. Just because State Farm "stands in the shoes of the uninsured motorist," this is not sufficient to demonstrate that the evaluations prepared by its claims adjusters can be withheld under the work product doctrine. The *Ellwein* court confirmed that an insurer's duty of good faith and fair dealing survives within the UIM relationship. This is because, although the relationship becomes adversarial, the insured still has "the 'reasonable expectation' that he will be dealt with fairly and in good faith by his insurer." *Id.* (internal citations omitted).

State Farm has not advocated a logical extension of the law. Rather, it continues to assert an argument that has been repeatedly rejected by this Court. *See*, *Hews v. State Farm Mut. Auto. Ins. Co*., Case 2:15-cv-00834-RAJ Dkt. 31 (W.D. Wash. Feb 24, 2016) ("Notwithstanding the adversarial roles in which Plaintiff and State Farm find themselves in as a function of the UIM insured and insurer relationship, State Farm must demonstrate that the claims notes and injury

evaluations it withholds were created because of litigation."); *Gamble v. State Farm Mut. Auto. Ins. Co*., 2020 WL 4193217 (W.D. Wash. July 21, 2020) (UIM case involving State Farm; materials at issue related to claim investigation in the ordinary course of business where State Farm's law firm was hired at least in part to engage in the claims investigation process); and *Barge v. State Farm Mut. Auto. Ins. Co*, 2016 WL 6601643 (W.D. Wash. Nov. 8, 2016) (UIM case involving State Farm, where documents pre-dating IFCA claim notices were in the ordinary course of business and not protected by the work product doctrine).

Based on the foregoing, the Court finds that State Farm's objections based on work product were not substantially justified and resulted in unnecessary motions practice. However, State Farm's objections based on the attorney-client privilege have been upheld. The Court must, therefore, determine whether the attorney fees requested by Plaintiff are reasonable.

In making this determination, the Court has reviewed the declarations of Plaintiff's counsel submitted with the fee request. *See* Dkt. 39, Johnson Decl.; Dkt. 40, Richardson Decl. The Court calculates the reasonable hourly rate by looking to the rate prevailing in the Western District of Washington "for similar work performed by attorneys of comparable skill, experience, and reputation." *See Chalmers v. City of L.A*., 796 F.2d 1205, 1210-11 (9th Cir. 1986); *see also Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th Cir. 2008) (the relevant community is "the forum where the district court sits"). The Court may also rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate. *Ingram v. Oroudjiam*, 647 F.3d 955, 928 (9th Cir.2011).

The hourly rate used by Plaintiffs' counsel of $425.00 is comparable to those "prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation," *Chalmers*, 796 F.2d at 1210-11; *see also Pelletz v. Weyerhaeuser Co*., 592 F. Supp.

2d 1322, 1326-27 (W.D. Wash. 2009) (finding "$475 to $760 per hour" to be a reasonable rate for attorneys located in Seattle). The number of hours expended (43.9 hours) is also reasonable given the issues and briefing involved. Plaintiff is also entitled to $250.00 for the cost of a court reporter to continue the deposition of Ms. Albers for two hours. However, because Plaintiff's motion was not granted as to State Farm's attorney-client privilege objections, the Court finds that the number of hours (43.9) should be reduced by 10%. Thus, Plaintiff is entitled to $17,041.75 (39.51 hours x $425.00 plus $250.00 in court reporter costs).

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Attorney Fees (Dkt. 38). State Farm is **ORDERED** to remit payment to Plaintiffs' counsel in the amount of $17,041.75.

DATED this 4th day of May, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge